UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JANET A. MASTRONARDI, in her :
capacity as Guardian of the Estate of :
JANE S. JACQUES :
 :
v. : C.A. No. 11-106ML
 :
HOME INSTEAD SENIOR CARE :
OF RHODE ISLAND, INC., et al. :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72(a)) are the parties' cross-motions for summary judgment. (Document Nos. 11 and 12). A hearing was held on February 27, 2012. For the following reasons, I recommend that Plaintiff's Motion for Summary Judgment (Document No. 11) be DENIED and Defendants' Motion for Summary Judgment (Document No. 12) be GRANTED.

**Facts**

On November 1, 2005, Plaintiff, in her capacity as Guardian, signed a Service Agreement with Home Instead Senior Care of Rhode Island, Inc. ("Home Instead RI")[1] to obtain certain non-medical home care services, i.e., companion/home helper, for the benefit of Jane Jacques. (Document No. 11-4). The Service Agreement provides that, in the event Home Instead RI or its employee uses his or her own automobile for the services, there would be a charge of $.39 per

---

[1] Home Instead Senior Care of Rhode Island, Inc. is a franchisee of Home Instead, Inc.

mile in addition to the regular hourly service charge.  Id.  If the client authorized use of his or her personal vehicle for errands and incidental transportation, the Service Agreement requires that the client maintain automobile insurance coverage in an amount at least at the applicable state law minimum and which covers authorized third-party drivers such as Home Instead RI's employees.  Id.  Additionally, the Service Agreement limits Home Instead RI's liability to damages "caused directly by the negligent acts or omissions by [Home Instead RI] or [its] employees and which result in bodily injury or property damage to Client."  Id.

On June 5, 2009, Cheryl Thornhill, in her capacity as an employee of Home Instead RI, was involved in a "head-on" automobile accident on Post Road in Warwick.  (Document No. 13-2).  Ms. Thornhill was operating her personal vehicle and was driving a client, Ms. Jacques, on an errand to the store when the accident occurred.  Id.  The other driver, Robert Sawyer, crossed over into oncoming traffic and was at fault in the accident.  Id.  Ms. Thornhill suffered minor injuries, and Ms. Jacques was more seriously injured in the accident.  Id.

Mr. Sawyer's vehicle was insured by GEICO at the Rhode Island state law minimum of $25,000.00 for liability.  See R.I. Gen. Laws § 31-31-7.  Ms. Thornhill's vehicle was insured by Progressive also at the Rhode Island state law minimum of $25,000.00 for liability.  Ms. Thornhill refused and waived uninsured and underinsured motorist coverage under her Progressive policy.

Since Mr. Sawyer was the tortfeasor, GEICO offered its policy limits to resolve Ms. Jacques' claim.  As an occupant, Ms. Jacques also had rights as an insured under Ms. Thornhill's Progressive policy.  (Document No. 11-3); Martinelli v. Travelers Ins. Co., 687 A.2d 443, 445

n.1 (R.I. 1996) (an occupant of an insured vehicle is a Class-II insured). However, as a practical matter, Ms. Jacques could not look to Ms. Thornhill's Progressive policy for her additional damages since Ms. Thornhill was not at fault in the accident, and Ms. Thornhill waived underinsured motorist coverage. Id.

At the time of the accident, Home Instead RI had a "Commercial Lines Policy" with Philadelphia Indemnity Insurance Company. Plaintiff commenced this action on March 16, 2011 seeking a declaratory judgment that the Philadelphia policy issued to Home Instead RI "provides underinsured motorist coverage in the amount of $1,000,000.00." (Document No. 1, p. 5).

**Standard of Review**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, "[t]he non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue

upon which it would bear the ultimate burden of proof at trial." Okpoko v. Heinauer, No. 10-43S, 2011 WL 835598, *15 (D.R.I. March 3, 2011). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

Cross-motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted). The legal standard for summary judgment is not changed when parties file cross-motions for summary judgment. Adria Int'l Group, Inc. v. Ferre Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Nw. Univ., 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

Since this is a diversity case involving a Rhode Island insurance policy, this Court must determine the rights of the parties to the insurance contract under Rhode Island law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Lyons v. Salve Regina Coll., 565 F.2d 200 (1st Cir. 1977). Under Rhode Island law, insurance policies are interpreted "according to the same rules of construction governing contracts." Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004). The Courts "look at the four corners of a policy, viewing it in its entirety, affording its terms their plain, ordinary and usual meaning." Id. If a policy's terms are ambiguous, it must be "strictly construed in favor of the insured." Id. If a

policy's terms are unambiguous, it will be construed and applied as written. Malo v. Aetna Cas. and Sur. Co., 459 A.2d 954, 956 (R.I. 1983). An ambiguity exists when the policy is "reasonably and clearly susceptible to more than one interpretation." W.P. Assocs. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). However, "the test is not whether there exist alternate meanings but whether there exist reasonable alternate meanings." RGP Dental, Inc. v. Charter Oak Fire Ins. Co., No. 04-445ML, 2005 WL 3003063 at *4 (D.R.I. November 8, 2005) (emphasis in original).

**Discussion**

**A.   Scope of Action**

Plaintiff filed this declaratory judgment action pursuant to 28 U.S.C. § 2201 against Home Instead RI (the Franchisee), Home Instead, Inc. (the Franchisor), Philadelphia Insurance Companies and Philadelphia Indemnity Insurance Company. (Document No. 1). In the Complaint, Plaintiff describes this case as one seeking "declaratory judgment with respect to coverage under a commercial automobile insurance policy...issued by Defendant Philadelphia Insurance Companies through its related entity Philadelphia Indemnity Insurance Company to its insured Home Instead Senior Care of Rhode Island, Inc. for underinsured motorist claims for which Plaintiff Janet Mastronardi, in her capacity as Guardian of the Estate of Jane S. Jacques is a party in interest." Id. at p. 1. Plaintiff also asks the Court to "[d]etermine liability of Franchisor Home Instead, Inc. for Uninsured Motorist Coverage of its agent Home Instead Senior Care, Inc." Id. at p. 5.

In her Motion for Summary Judgment, Plaintiff also argues that, if there is "insufficient insurance" with Home Instead RI, then, a commercial General Liability Policy issued by First Speciality Insurance Company to Home Instead, Inc., as Franchisor, "would provide excess coverage through stacking." (Document No. 11-1 at p. 12).

Plaintiff has not sued First Specialty Insurance Company as a party in interest to this declaratory judgment action and has not sought leave to amend her Complaint to do so. Defendants argue that First Speciality is "not a party to this action and Plaintiff's attempt to effectively amend her complaint to obtain declaratory relief regarding the [First Speciality] policy should be rejected." (Document No. 16 at p. 4). In addition, Defendants contend that, in any event, there is no legal basis for any finding of coverage under such policy for Ms. Jacques' injuries.

Plaintiff is asking this Court to declare the parties' respective legal rights under a particular insurance policy without joining the insurer as a party to the action. However, the insurer obviously has an interest in being heard as to the scope of coverage under its policy, and the Court would not be able to provide complete and final relief to the named parties regarding coverage under the policy in the absence of the issuing insurer. See Fed. R. Civ. P. 19(a).

Plaintiff's counsel did not directly address this issue either in his legal memoranda or at the hearing. In fact, in response to my question on this issue at the hearing, Plaintiff's counsel described the issue of coverage under the First Specialty policy as "probably moot" and that the "focus" of his claim is on the Philadelphia policy. Thus, since First Specialty is not a party to this case, and Plaintiff has not shown that this Court can properly, in the absence of First

Specialty, fully and finally adjudicate its legal duties and obligations under an insurance policy it issued, I decline to address Plaintiff's arguments under the First Specialty policy and conclude that such policy is not properly before this Court for the purpose of rendering declaratory relief. Alternatively, I find that Plaintiff has waived any such argument by failing to properly and directly address the issue of the Court's legal authority to render a declaratory judgment as to the First Specialty policy when First Specialty has not been sued, and its policy is not even referenced in the Complaint.

**B.  Underinsured Coverage Claim**

Plaintiff contends that a "careful application" of these undisputed facts to the Rhode Island statute mandating uninsured/underinsured motorist coverage (R.I. Gen. Laws § 27-7-2.1) and the relevant policy provisions establishes that Ms. Jacques is a primary insured[2] under the "business auto" provisions of Home Instead RI's commercial insurance policy issued by Philadelphia. Thus, Plaintiff contends that, under Rhode Island law, an underinsured motorist arbitration proceeding must be commenced to determine Ms. Jacques' damages, if any, over and above what the GEICO policy has provided. Defendants counter that, pursuant to the clear and unambiguous terms of the applicable insurance policy, there is no coverage for Ms. Jacques' injuries. Defendants also assert that the Policy at issue only affords <u>excess</u> automobile liability

---

[2] Under Rhode Island law, coverage is primary when an insurer is liable for the risk insured against, regardless of other available coverage. <u>Brown v. Travelers Ins. Co.</u>, 610 A.2d 127, 128 (R.I. 1992). Coverage is excess if it is triggered only when the amount of the loss exceeds the limits of (or exhausts) other available insurance. <u>Liberty Mut. Ins. Co. v. Harbor Ins. Co.</u>, 603 A.2d 300, 301 n.2 (R.I. 1992).

insurance coverage under these circumstances and thus R.I. Gen. Laws § 27-7-2.1 is inapplicable.[3]

Philadelphia issued an insurance policy to Home Instead RI for the period July 1, 2008 to July 1, 2009. (Document No. 13-3, p. 3). The policy covered commercial property, commercial general liability, commercial crime, professional liability and commercial auto. Id. The total annual premium was $7,152.00 with $766.00 of that total attributed to commercial auto coverage. Id.

The commercial auto coverage covers "liability" with a $1,000,000.00 policy limit (CSL – combined single limit). Id. at p. 6. The liability coverage applies to "covered autos" in classes 08 and 09. Id. The "covered auto" classes are defined in the "business auto coverage form." Class 08 are "hired autos only" defined as "[o]nly those 'autos' you lease, hire, rent or borrow" and "does not include any 'auto' you lease, hire, rent, or borrow from any of your 'employees.'" Id. at p. 15. Class 09 are "nonowned autos only" defined as "[o]nly those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business" and "includes 'autos' owned by your 'employees'...but only while used in your business...." Id. Thus, Ms. Thornhill's vehicle is a Class 09 covered auto under the policy.

As to commercial auto liability coverage, the policy provides that the insurer "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property

---

[3] Defendants argue that the policy was intended to protect Home Instead's client with excess "business auto" coverage in cases of the negligence of its employee and damages exceeding the employee's auto liability coverage, and that it was not intended to protect Home Instead's client from an uninsured or underinsured third-party tortfeasor.

damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of covered 'auto.'" Id. at p. 16.

The policy defines an "insured" for purposes of this commercial auto liability coverage as Home Instead RI for any "covered auto." Id. An "insured" also includes "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow except...[y]our employee if the covered 'auto' is owned by that 'employee' or a member of his or her household." Id. at pp. 16-17. Thus, Ms. Thornhill was not an "insured" under the Philadelphia policy. However, Ms. Thornhill was a Class-I named insured and Ms. Jacques a Class-II insured occupant under Ms. Thornhill's Progressive policy. See Martinelli, 687 A.2d at 445 n.1.

The policy also contains an "other insurance" clause which states that, for covered autos owned by the named insured, i.e., Home Instead RI, the coverage is "primary insurance." Id. at p. 23. But, for covered autos not owned by the named insured, the insurance is "excess over any other collectible insurance." Id. Since Ms. Thornhill's vehicle was a covered auto not owned by Home Instead RI, the Philadelphia coverage is excess by its plain terms.

Plaintiff does not identify any particular provisions in the Philadelphia policy which directly provide underinsured coverage to Ms. Jacques in these circumstances. Rather, Plaintiff contends that, pursuant to R.I. Gen. Laws § 27-7-2.1 and the "significant public policy concerns" present, the Court must "write in" uninsured motorist coverage by operation of law. (Document No. 11-1 at p. 13). Rhode Island law (R.I. Gen. Laws § 27-7-2.1) requires "that in each liability-insurance policy an insurer must provide some minimum protection against property damage and personal injury caused by an uninsured or a hit-and-run motor vehicle for the protection of

persons insured thereunder." Ladouceur v. Hanover Ins. co., 682 A.2d 467, 469 (R.I. 1996). The legislative intent of the requirement is "that as a matter of public policy, protection should be given to the named insured against economic loss resulting from injuries sustained by reason of the negligent operation of an uninsured vehicle." Rueschemeyer v. Liberty Mut. Ins. Co., 673 A.2d 448, 450 (R.I. 1996) (citations omitted). "This statute was premised on the concept that responsible motorists who carry liability insurance should not be uncompensated when they are without recourse against an uninsured tortfeasor." Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 553 (R.I. 1990). In 1985, Rhode Island expended the definition of "uninsured motorist" to include underinsured motorists. Id. (citing R.I. Gen. Laws § 27-7-2.1(g)).

The Rhode Island uninsured motorist statute, by its plain terms, applies only to a "policy insuring against loss" defined as one providing "primary coverage for the insured motor vehicle." R.I. Gen. Laws § 27-7-2.1(a), (c)(1). In this case, it is undisputed that Ms. Thornhill was an employee of Home Instead RI who was driving her own personal vehicle and acting as an employee of Home Instead RI at the time of the accident that injured Ms. Jacques, a Home Instead RI client. It is also undisputed that Ms. Thornhill was not at fault in the accident and that neither she nor Home Instead RI have any direct tort liability for Ms. Jacques' injuries. Finally, it is undisputed that Ms. Thornhill waived underinsured motorist coverage for herself, and effectively for her passenger Ms. Jacques, under her Progressive policy. See Wagenmaker v. Amica Mut. Ins. Co., 601 F. Supp. 2d 411, 419 (D.R.I. 2009) (if an insured chooses not to insure his vehicle for uninsured motorist coverage "he does so at his peril and unfortunately to the peril of his passengers").

Here, it does not appear that Home Instead RI owns any motor vehicles because the business auto declarations in the Philadelphia policy only list coverage for Class 08 covered autos (hired/leased autos) and Class 09 covered autos (employee-owned autos used in connection with Home Instead RI's business). (Document No. 13-3 at p. 6). The listed annual premium for $1,000,000.00 in liability coverage for such non-owned autos is only $688.00 which is suggestive that the policy was intended to provide only excess and not primary coverage. The Philadelphia policy also expressly excludes an employee such as Ms. Thornhill as an "insured" if the "covered auto" is owned by that employee. Further, the Philadelphia policy states that it provides "primary insurance" for any owned "covered auto" but coverage for non-owned "covered autos" is "excess over any other collectible insurance." Id. at p. 23. Since the Philadelphia policy in issue does not cover any "owned autos" and it does not appear that Home Instead RI owned any autos, the policy was solely an excess policy providing coverage essentially for leased/rented autos and employee-owned autos used for work purposes. Because it is an excess policy, it is not a "policy insuring against loss" within the meaning of, and subject to the requirements of, R.I. Gen. Laws §27-7-2.1.[4] Thus, Plaintiff has shown no legal basis under R.I. Gen. Laws § 27-7-2.1 to write in underinsured motorist coverage for Ms. Jacques' injuries under the Philadelphia policy by operation of law.

Plaintiff's efforts to characterize Ms. Jacques as a "primary insured" under the Philadelphia policy are not supported by the terms of the policy or Rhode Island law. As noted

---

[4] R.I. Gen. Laws § 27-7-2.1(c)(1) defines a "policy insuring against loss" as one providing "primary coverage for the insured motor vehicle." Here, as noted above, GEICO provided primary coverage for the vehicle operated by the tortfeasor and Progressive for the employee's vehicle.

above, for non-owned autos, the Philadelphia policy is "excess over any other collectible insurance." Plaintiff argues, in part, that the coverage is primary because "[h]ere there is no other collectible <u>underinsurance</u>." (Document No. 20 at p. 2). (emphasis added). However, the Philadelphia policy speaks in broad terms of "any other collectible <u>insurance</u>." (emphasis added). In the instant case, there was "collectible insurance" for Ms. Jacques' injuries under the GEICO policy, although apparently not enough collectible insurance.

Overall, Plaintiff's arguments are based primarily on what she identifies as "public policy concerns" and have little, if any, support in the policy language or the law. For instance, Plaintiff argues "[t]o exclude [Ms. Thornhill's] vehicle from coverage (where no relevant policy exclusion exists) would mean that defendant Home Instead RI can hire employees who have no uninsured motorist coverage, send them out to drive patients to medical appointments, and expose them to uninsured or underinsured dangers." (Document No. 11-1 at p. 10). Plaintiff contends that this "clearly contravenes both the intent of the legislature and the safety of the elderly who Home Instead RI contracted and insured to protect." <u>Id.</u> While Plaintiff raises valid concerns, the Court is constrained to interpret the policy and the applicable law, and is not free to use the benefit of hindsight to manufacture coverage for an unanticipated or underappreciated risk.

If Ms. Thornhill had been the tortfeasor, the Philadelphia policy obtained by Home Instead RI would have provided excess coverage of up to $1,000,000.00 above the $25,000.00 available under the primary Progressive policy. However, neither Ms. Thornhill nor Home Instead RI are tortfeasors here, and Plaintiff has not shown that they or their insurers are legally

obligated to compensate Ms. Jacques for injuries beyond the limits of the third-party tortfeasor's insurance. In hindsight, Home Instead RI could have required its employees, such as Ms. Thornhill, to have a sufficient minimum level of uninsured/underinsured coverage on their vehicles if they used them to transport clients, or obtained such insurance itself. Also, Plaintiff, in her capacity as guardian of Ms. Jacques, could have obtained such coverage or contractually required Home Instead RI to obtain such coverage as a requirement of the Service Agreement. Since none of those potential steps were taken, Ms. Jacques was left without adequate insurance protection for injuries caused by a third-party tortfeasor under these circumstances. While that is an unfortunate outcome, Plaintiff has simply not shown that either the terms of the Philadelphia policy or the operation of R.I. Gen. Laws § 27-7-2.1 make Philadelphia or Home Instead RI[5] legally responsible for any uncompensated damages incurred by Ms. Jacques as a result of Mr. Sawyer's negligence. Thus, Plaintiff's request for a declaratory judgment that the Philadelphia policy in question "provides underinsured motorist coverage in an amount of $1,000,000 Dollars" should be denied.

**Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Motion for Summary Judgment (Document No. 11) be DENIED and Defendants' Motion for Summary Judgment (Document

---

[5] Plaintiff's Complaint also seeks a determination of "liability of Franchisor Home Instead, Inc. for Uninsured Motorist Coverage of its agent Home Instead [RI]." (Document No. 1 at p. 5). Since Plaintiff has not established any liability as to Home Instead RI, her attempt to extend liability to Home Instead, Inc. on agency grounds is effectively moot. Furthermore, even if the agency issue was not moot, Plaintiff does not provide any legal or evidentiary support in this case upon which to find that Home Instead RI was acting as the "agent" of Home Instead, Inc. in this franchise relationship or to otherwise transfer liability from the franchisee to the franchisor. Finally, the Service Agreement signed by Plaintiff acknowledges that Home Instead RI is "an independently owned and operated franchisee of Home Instead, Inc. and that Home Instead, Inc. (i) is not providing any of the Services under th[e] Agreement; (ii) is not a party to th[e] Agreement in any way; and (iii) is in no way responsible for the acts or omissions of [Home Instead RI] or [its] employees." (Document No. 11-4).

No. 12) be GRANTED, and that Final Judgment enter in favor of Defendants on all claims in Plaintiff's Complaint.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


 /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 14, 2012